## CLEVELAND & SANDUSKY BREWING CO. v. CHARLES S. MAY CO.

(District Court, N. D. New York.    July 30, 1923.)

1. **Sales** ⊕══91—**Happening of stipulated event held to effect cancellation of contract.**

A provision, in a contract for the sale of hops to a brewery, that in the event the state should go dry "sellers agree to cancel such part of such contract as has not been shipped," *held* not to give the buyer an option to cancel, but to operate as a cancellation on the happening of the stipulated event.

2. **Sales** ⊕══84—**Provision for cancellation of contract if a state "goes dry" held to become effective when a constitutional amendment went into effect and not on the date of its adoption.**

A provision of a contract for sale of hops to a brewing company, for cancellation as to future deliveries "in the event that the state of Ohio goes dry during the term of this contract," *held* to have become effective when a constitutional amendment prohibiting manufacture of beer went into effect and the state became legally dry, and not on the date of the election at which it was adopted, especially in view of the subsequent action of the parties.

⊕══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by the Cleveland & Sandusky Brewing Company against the Charles S. May Company. Trial to court, and judgment for plaintiff.

Rosendale, Dugan & Haines, of Albany, N. Y. (P. C. Dugan, of Albany, N. Y., of counsel), for plaintiff.

Stern & Hirschfield, of Albany, N. Y. (Andrew J. Nellis, of Albany, N. Y., of counsel), for defendant.

COOPER, District Judge. This is an action on contract tried by the court, upon a stipulation waiving trial by jury. The contract was made March 12, 1917, for the sale of hops by the defendant to the plaintiff, at Cleveland, Ohio. The deliveries were to be made as follows: 150 bales during January, 1918; 125 bales during November, 1918; 125 bales during February, 1919; 100 bales during November, 1919; and 100 bales each in January and March, 1920.

The contract had the following provision, or cancellation clause, upon which the controversy turns:

"In the event that the state of Ohio goes dry during the term of this contract, the sellers agree to cancel such part of such contract as has not been shipped."

At the general election in November, 1918, the voters of Ohio adopted an amendment to the state Constitution (article 15, § 9), prohibiting the manufacture and sale of intoxicating beverages within the state. By its terms the amendment was to be effective May 27, 1919 (see Schedule to Const. § 22).

All the deliveries up to and including the deliveries for November, 1918, were made pursuant to the terms of the contract, and prior to the general election of 1918. Plaintiff demanded delivery of the 125 bales of hops contracted to be delivered in February, 1919, claiming that the contract would not be terminated in any aspect of the case, until May 27, 1919, when the prohibition amendment became effective, and also claiming that the option for the cancellation of the contract ran to the buyer only, and not to both parties. The defendant refused to deliver the hops, claiming that the contract was terminated or canceled by the adoption of the prohibition amendment to the state Constitution during the term of the contract. It is stipulated that plaintiff's damage, if he is entitled to judgment, is the sum of $5,000.

[1] The plaintiff's contention that the option to cancel the contract ran only to the buyer is not well taken.

At the time of the making of the contract, the plaintiff conducted three breweries in the state of Ohio, in which large quantities of hops were used for the manufacture of beer. The possibility of an amendment to the state Constitution prohibiting the manufacture and sale of beer was evidently one which persons engaged in the brewing business must seriously consider. Proposed amendments had been voted on prior to the making of this contract. If the manufacture of beer was prohibited by law, the brewery would have no use for hops, or the other materials used for the manufacture of beer. The plaintiff, therefore, required its contract, which it made with the defendant for

the purchase of hops from the defendant, to contain a clause under which it should be relieved from further obligations under the contract, if, and when, the manufacture of beer in Ohio should be prohibited by law. The contract was drawn by laymen, and its meaning, where ambiguous, must be sought in the surrounding circumstances.

It was not the intent of the contract that the discretion, or option, as to the contract, should reside with either party, but it was the intention, in the view of this court, that the contract should automatically be canceled by the happening of this stipulated event. In that respect, the clause must be construed as if it had read:

"In the event that the state of Ohio goes dry during the term of this contract, the *parties* agree to cancel such part of such contract as has not been shipped."

This construction is substantially conceded by the attorney of the brewing company, Mr. Joseph, who was also a director, in his letter of February 14, 1919.

[2] The remaining and more important question to be determined here is the correct interpretation of the words "goes dry" in the cancellation clause of the contract above set forth, for upon that interpretation depends the liability of the defendant. If the parties meant that Ohio "goes dry" when the vote is taken at the election, then defendant has fulfilled his contract and is not liable. If the parties meant that Ohio "goes dry" when the amendment becomes effective, i. e., when beer may no longer be manufactured and sold, then defendant is liable.

It is in accord with the uniform custom of the adoption of amendments to Constitutions, state or federal, that the amendment shall not take effect immediately upon the passage or the adoption of the amendment, but that a reasonable time shall elapse between the adoption of the amendment and the taking effect thereof.

This intervening time gives the people affected opportunity to adjust their affairs and conduct to the new order of things, which obtains after the amendment takes effect. And indeed, often, if not usually, time is necessary for legislative enactment, to provide means for the enforcement of the amendments.

It must have been known to the parties here that constitutional amendments do not become effective immediately upon their adoption, but at a later time usually stated in the amendment itself. Ohio would not be legally "dry" on the day of the election, or referendum, nor on the day the result of the election or referendum was officially determined. Ohio would not be legally "dry" until the amendment became effective, viz. May 27, 1919.

It must be admitted that there is much force in the defendant's argument that forms of the verb "go," such as "will go," "goes," "has gone," "went," are popularly used to indicate the result of an election. But this popular use of the term cannot fairly be said to be the sense in which it was used in this contract. Strictly speaking, Ohio does not go dry when the Legislature has enacted a law, or the people have adopted a constitutional amendment, to that effect, but will only go dry, or be dry, when the statute or the amendment becomes effective.

While it is not free from doubt or ambiguity, yet it must be held here that the phrase "goes dry," in the provision of the contract to the effect that the contract is to be canceled "in the event that Ohio 'goes dry,' " is intended to mean the time when Ohio "becomes dry." Or, in other words, the time when the prohibition becomes effective in law.

The view herein set forth is supported by the case of Welker v. Brewing Co., 11 Ohio App. R. 117, where the same words "goes dry" were held to relate to the time the amendment became effective.

It is true that in that case the court supported its opinion by what it said was the interpretation of the contract by the parties in their conduct after the election. To some extent in this case, the parties may be said to have interpreted this cancellation clause by their declarations, which are only consistent with an understanding that the cancellation clause became effective, not at the adoption of the amendment, but at the taking effect thereof.

On November 1, 1918, before the election at which the amendment was adopted, the plaintiff wrote the defendant that instead of holding any hops for the fulfillment of the contract with plaintiff, defendant had sold the hops "in view of the order to stop all brewing on December 1st." This order was a federal war prohibition order. The plaintiff had asked for samples preparatory to further deliveries. On January 27, 1919, nearly three months after the passage of the amendment, the defendant wrote the plaintiff as follows:

"We are in receipt of your favor of the 25th. In reply, would beg to inform you in view of the federal order prohibiting the manufacture of beer on and after December 1st, 1918, and the further fact that Ohio *goes dry* during the term of the contract, all shipments that have not been made are canceled. Under the circumstances, we are not called upon to make any further shipments of hops under said contract, and feel confident you must have overlooked the effect of the cancellation clause when you wrote your letter."

On February 6, 1919, in reply to another letter from the plaintiff, the defendant wrote the plaintiff as follows:

"In reply to your letter of the 4th inst., beg to say that had the conditions clause not been inserted in the contract, we should before this submitted you samples for selection of the mentioned February shipment. The language of that clause is very clear; no specific time is stipulated for Ohio to go dry, excepting the words 'During the term of this contract' and that is plainly any time between March 12, 1917, and March, 1920. You say that the state will be dry May 27, 1919, so that there does not appear to be an question or doubt, inasmuch as that date is clearly within 'the term of this contract.' "

It is reasonably clear from the foregoing letters of the defendant, written after the prohibition amendment was adopted, that the defendant did not interpret "goes dry" to mean that the cancellation clause became effective at the time of the election, because the defendant never made any such claim. The defendant's position was, that if Ohio went dry during any part of the term of the contract, the contract was thereby immediately cancelled as soon as it was known that Ohio was to go dry at any time during the term of the contract. This position of course, is untenable, and a proper construction is that the cancellation clause does not apply until Ohio "goes dry." While the defendant did not admit in so many words that Ohio would go dry

within the term of the contract on May 27, 1919, the time when the amendment became effective, all that the defendant said was consistent only with that position.

The court received the oral testimony of the president of the defendant company, as to statements and transactions prior to the making and execution of the contract, as competent for the interpretation of the cancellation clause of the contract. The decision in this case is nevertheless for the plaintiff, as such evidence is not sufficiently clear and definite to overcome the foregoing interpretations of the words of the cancellation clause, in view of all the facts and circumstances surrounding the case, and the declarations of the parties subsequent to the election.

The objection of the plaintiff to the receipt of defendant's Exhibit No. 4 is overruled, and an exception given to the plaintiff.

The defendant's newspaper clippings containing the words "goes dry," offered in aid of the proper interpretation of those words in the contract, are received in evidence, and plaintiff given an exception.

Judgment for the plaintiff may be entered.